CLEMENT AND HO,
A Professional Law Corporation
RANDALL J. CLEMENT, Cal. Bar No. 193443
201 W. Whiting Avenue
Fullerton, California 92832
Telephone: (714) 882-5794
Facsimile: (714) 882-5795
*randy@clementandholaw.com*

Attorneys for Plaintiff JUUL Labs, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUUL LABS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>NIAZI. B INC, a California corporation,<br><br>Defendant. | Case No. 5:21-cv-5093<br><br>**PLAINTIFF'S COMPLAINT FOR:**<br>**(1) TRADEMARK INFRINGEMENT – COUNTERFEIT GOODS (15 U.S.C §1114);**<br>**(2) FALSE DESIGNATION OF ORIGIN – COUNTERFEIT GOODS (15 U.S.C. §1125(a));**<br>**(3) UNFAIR COMPETITION – COUNTERFEIT GOODS (15 U.S.C. §1125(a));**<br>**(4) TRADEMARK INFRINGEMENT – GREY MARKET GOODS (15 U.S.C. §1114); and**<br>**(5) UNFAIR BUSINESS PRACTICES (CALIFORNIA BUSINESS & PROFESSIONS CODE §17200,** *et seq.***)** |

Plaintiff JUUL Labs, Inc. ("JLI"), by and through its undersigned attorneys, files this Complaint against defendant Niazi. B Inc, a California corporation ("Defendant"), and hereby alleges as follows:

## NATURE OF THE ACTION

1. JLI is the designer, manufacturer, and distributor of JUUL-branded electronic nicotine delivery systems ("ENDS") and other related products (collectively, "the JUUL Products").

2. The JUUL Products have become targets for individuals and entities who wish to take a "free ride" on the commercial success of the JUUL brand that JLI has spent considerable effort and resources to build.

3. Specifically, wrongdoers have counterfeited JUUL Products by illegally manufacturing, selling, and distributing fake, copied, and non-genuine versions of JUUL Products and related packaging.

4. Through this action, JLI combats the sale and distribution of these unlawful counterfeit products.

## PARTIES

5. JLI is a corporation organized and existing under the laws of the State of Delaware.

6. Defendant Niazi. B Inc is a corporation organized and existing under the laws of the State of California and having its principal place of business at 4614 Meridian Avenue, San Jose, California 95124. Defendant owns and operates the Discount Cigarettes retail store at that location.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§1331, 1338(a), and 1338(b) because (i) claims herein arise out of federal trademark laws as codified in 15 U.S.C. §1114 and 15 U.S.C. §1125(a) (*i.e.*, trademark infringement, false designation of origin, and unfair competition); and (ii) the unfair business practices claim herein is brought with and

is related to the substantial claims based on trademark laws. This Court also has supplemental jurisdiction over JLI's claims arising under common law or state law pursuant to 28 U.S.C. §1367(a) because the claims are so related to JLI's federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8. This Court has general personal jurisdiction over Defendant due to its residence and business activities in this judicial district. This Court has specific personal jurisdiction over Defendant due to the nature and quality of its actions toward the state in which this Court is located. The claims asserted herein arise out of and relate to such actions and this Court's exercise of specific personal jurisdiction over Defendant comports with traditional notions of fair play and substantial justice.

9. Venue in this judicial district is proper for these claims pursuant to 28 U.S.C. §1391(b). As described herein, Defendant resides in this judicial district, a substantial part of the events or omissions giving rise to these claims occurred in this judicial district, and Defendant has extensive contacts with this judicial district relating to JLI's claims. Defendant conducts regular and systematic business transactions in this judicial district, including direct sales to consumers in this judicial district, which violate the intellectual property rights of JLI.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

JUUL Trademarks and Products

10. JLI is the exclusive owner of federally-registered, registration-pending, and common law trademarks. For example, JLI owns the following United States Trademark Registrations:

| Depiction of Trademark | Registration No. and Date | (1) First Use (2) In Commerce |
|---|---|---|
| JUUL® | 4,818,664 (09-22-2015) | (1) 06-01-2015 (2) 06-01-2015 |

| Depiction of Trademark | Registration No. and Date | (1) First Use (2) In Commerce |
|---|---|---|
| JUUL® | 4,898,257 (02-09-2016) | (1) 06-01-2015 (2) 06-01-2015 |
| JUULpods® | 5,918,490 (11-26-2019) | (1) 06-30-2015 (2) 06-30-2015 |

11. True and correct copies of the Registration Certificates for the above-listed trademarks are attached hereto as Exhibit A. Hereinafter, JLI may sometimes utilize the phrase "the JUUL Marks" to refer to, collectively, JLI's federally-registered, registration-pending, and common law trademarks.

12. JLI designs, manufactures, distributes, markets, and sells JUUL Products, including the JUUL system comprised of: (i) a device containing a rechargeable battery, control circuitry and a receptacle for a cartridge or pod, (ii) a disposable cartridge or pod ("JUULpod") that can be inserted into the device, has a heating chamber and is prefilled with a proprietary nicotine e-liquid formulation, and (iii) a charger for charging the device, and related accessories.

13. The JUUL Marks appear clearly on JUUL Products, as well as the packaging and marketing materials related to such products.

14. The JUUL Marks, as well as the goodwill arising from such trademarks, have never been abandoned.

15. JLI continues to preserve and maintain its rights with respect to the JUUL Marks, including those registered with the United States Patent and Trademark Office.

16. Due in large part to the substantial commercial success of the JUUL Products, the JUUL brand is well-known to consumers and has garnered extensive coverage by the media.

17. Through the extensive use of the JUUL Marks, JLI has spent substantial time, money, and effort in developing consumer recognition and awareness of its brand. JLI markets JUUL Products nationwide to current adult

smokers, including through its website, and sells its products through its nationwide authorized network. JLI also markets and sells its products internationally. JLI has built up and developed significant customer goodwill in its entire product line and the JUUL Products are immediately identified by the JUUL Marks.

Sales of Unlawful Grey Market Goods

18. Beginning on a date that is currently unknown to JLI, Defendant, without the consent of JLI and within the United States, has offered to sell and sold non-genuine JUUL Products which, as stated on the packaging of the products themselves, are only authorized for sale in particular countries outside the United States and materially differ from genuine JUUL Products ("Unlawful Grey Market Goods"). Because the Unlawful Grey Market Goods are labeled and packaged to comply with the regulations of the authorized foreign marketplaces, the labeling and packaging of the Unlawful Grey Market Goods are not in compliance with the regulations of the U.S. Food and Drug Administration.

19. For example, on October 3, 2020, a representative of JLI made an in-person purchase of Unlawful Grey Market Goods for sale at the Discount Cigarettes retail business owned and operated by Defendant located at 4614 Meridian Avenue, San Jose, California 95124 (the "Discount Cigarettes Business"). True and correct images of the products purchased on October 3, 2020 are attached hereto as Exhibit B. JLI subsequently inspected the products purchased on October 3, 2020 and confirmed that the purchased products are in fact diverted grey market products.

20. Further, on October 15, 2020, a representative of JLI made an in-person purchase of an Unlawful Grey Market Good for sale at the Discount Cigarettes Business. A true and correct image of the product purchased on October 15, 2020 is attached hereto as Exhibit C. JLI subsequently inspected the product purchased on October 15, 2020 and confirmed that the purchased product is in fact a diverted grey market product.

Cease-and-Desist Correspondence to Defendant

21. On November 18, 2020, JLI's counsel mailed a cease-and-desist correspondence to Defendant. A true and correct copy of this correspondence is attached hereto as Exhibit D. This cease-and-desist correspondence provided specific notice of the following, among other items: (i) JLI's confirmation that goods sold by Defendant are in fact non-genuine grey market goods; (ii) JLI's demand that Defendant cease the sale, manufacture, marketing, and importation of Unlawful Grey Market Goods and all other unauthorized use of JLI's intellectual property; (iii) JLI's ownership of the JUUL Marks; (iv) the statutory prohibition of the sale of Unlawful Grey Market Goods and all other unauthorized use of JLI's intellectual property, and JLI's right to seek monetary judgments against infringers; and (v) Defendant's willful infringement under federal law would be established by any further sales of Unlawful Grey Market Goods or any other unauthorized use of JLI's intellectual property.

22. The November 18, 2020 cease-and-desist correspondence requested that Defendant contact JLI's counsel to discuss pre-litigation resolution of the legal issues arising from the sale of the Unlawful Grey Market Goods and all other unauthorized use of JLI's intellectual property. Defendant, however, did not contact JLI's counsel.

Continued Sales (Counterfeit Goods and Unlawful Grey Market Goods)

23. Beginning on a date that is currently unknown to JLI, Defendant, without the consent of JLI, has offered to sell and sold, and/or facilitated the offer and sale of, goods that were neither made by JLI nor by a manufacturer authorized by JLI, all by using reproductions, counterfeits, copies and/or colorable imitations of JUUL Products and the JUUL Marks ("Counterfeit Goods").

24. JLI has not authorized any third party, including Defendant, to make or sell ENDS or other types of products in connection with the JUUL Marks. The Counterfeit Goods sold by Defendant are therefore not manufactured in accordance

with JLI's own stringent quality controls but are instead manufactured outside of JLI's knowledge and control, using unknown substances and materials, in unknown locations and with unknown manufacturing requirements/controls.

25. The Counterfeit Goods sold by Defendant bear counterfeit and confusingly similar imitations of the JUUL Marks in a manner likely to be confused with genuine JUUL Products

26. On December 29, 2020, a representative of JLI made an in-person purchase of a Counterfeit Good and an Unlawful Grey Market Good for sale at the Discount Cigarettes Business. True and correct images of the products purchased on December 29, 2020 are attached hereto as Exhibit E. JLI subsequently inspected the products purchased on December 29, 2020 and confirmed that the purchased products are in fact counterfeit and diverted grey market products.

27. Defendant is not authorized and never has been authorized by JLI to produce, manufacture, distribute, market, offer for sale, and/or sell merchandise bearing the JUUL Marks, or any variations thereof. JLI has no control over the nature, quality, or pricing of Defendant's products or marketing, or any other aspect of the business conduct of Defendant.

28. Defendant uses words, symbols, images, designs, and names confusingly similar or identical to the JUUL Marks to confuse consumers and aid in the promotion and sales of the Counterfeit Goods.

29. Defendant's counterfeit sales outlined above are likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that the products are authorized by JLI. Purchasers and prospective purchasers using or simply viewing Defendant's Counterfeit Goods and who perceive a defect, lack of quality, or any other irregularity are likely to mistakenly attribute the issue to JLI, to the detriment of JLI's business and the JUUL brand.

30. The likelihood of confusion, mistake, and deception brought about by Defendant's misappropriation of the JUUL Marks is causing irreparable harm to the

goodwill symbolized by the JUUL Marks and the reputation for quality that said marks embody.

31.     Defendant's unauthorized use of the JUUL Marks began after JLI legally established the existence and significant value of such trademarks, including after JLI's adoption and use of the JUUL Marks and after JLI obtained the trademark registrations described above.

32.     Defendant's infusion of the Counterfeit Goods into the marketplace reflects adversely on JLI, results in economic loss to JLI including loss of sales of genuine JUUL Products, damages the goodwill of the JUUL brand, and thwarts JLI's honest efforts and considerable expenditures to promote its genuine JUUL Products using the JUUL Marks.

## FIRST CAUSE OF ACTION

## Trademark Infringement – Counterfeit Goods (15 U.S.C. §1114)

33.     JLI re-alleges and incorporates by this reference each and every allegation in paragraphs 1 through 32 as though set forth fully herein.

34.     The JUUL Marks, as well as the goodwill arising from such trademarks, have never been abandoned.  The JUUL Marks appear clearly on JUUL Products, as well as the packaging and marketing related to such products.  JLI continues to preserve and maintain its rights with respect to the JUUL Marks.

35.     Defendant's intentional and/or willful actions to sell and distribute the Counterfeit Goods which use spurious designations that are identical to, or substantially indistinguishable from, the JUUL Marks as described herein are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that the Counterfeit Goods are genuine or authorized JUUL Products.

36.     The foregoing acts of Defendant constitute direct, contributory, and/or vicarious trademark infringement in violation of 15 U.S.C. §1114.

37. JLI has been damaged as a result of Defendant's infringement of the JUUL Marks. JLI alleges, on information and belief, that Defendant's sale and distribution of the Counterfeit Goods have resulted in lost sales to JLI, have reduced the business and profits of JLI, and have injured the general reputation of JLI, all to JLI's damage in an amount not yet ascertainable, but will be determined during this action or considered in relation to a request for statutory damages.

38. JLI alleges, on information and belief, that Defendant has derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but will be determined during this action or considered in relation to a request for statutory damages.

39. On information and belief, Defendant acted intentionally and/or willfully in infringing upon the JUUL Marks through sale and distribution of the Counterfeit Goods, knowing that the JUUL Marks belonged to JLI, that the Counterfeit Goods were in fact infringing, and that Defendant was not authorized to infringe upon the JUUL Marks through sale and distribution of the Counterfeit Goods.

40. Defendant's spurious designation of its products also constitutes the knowing use by Defendant of at least one "counterfeit mark" as defined in 15 U.S.C. §1116(d)(1)(B). Therefore, JLI is entitled to recovery of treble damages and to an award of reasonable attorneys' fees pursuant to 15 U.S.C. §§1117(a) and 1117(b).

41. Because Defendant's actions also constitute the use by Defendant of at least one "counterfeit mark" as defined in 15 U.S.C. §1116(d)(1)(B), JLI reserves the right to elect, at any time before final judgment is entered in this case, an award of statutory damages pursuant to 15 U.S.C. §1117(c)(1) or (2). JLI alleges, on information and belief, that Defendant has knowingly and willfully engaged in the acts complained of with oppression, fraud, malice, and in conscious disregard of the

rights of JLI. JLI is, therefore, entitled to the maximum statutory damages allowable.

42. The acts of direct, contributory, and/or vicarious trademark infringement committed by Defendant have caused, and will continue to cause, JLI irreparable harm unless they are enjoined by this Court. On information and belief, Defendant's actions were committed in bad faith and with the intent to cause confusion and mistake, and to deceive the consuming public as to the source, sponsorship, and/or affiliation of Defendant and/or the Counterfeit Goods.

## SECOND CAUSE OF ACTION

### False Designation of Origin – Counterfeit Goods (15 U.S.C. §1125(a))

43. JLI re-alleges and incorporates by this reference each and every allegation in paragraphs 1 through 42 as though set forth fully herein.

44. Defendant's unauthorized use of the JUUL Marks, brand names, and the other distinctive words, symbols, slogans, color schemes, images, and designs through which Defendant presents its Counterfeit Goods to the market constitutes a wrongful and false representation to the consuming public that the Counterfeit Goods sold by Defendant originated from JLI or somehow are authorized by or affiliated with JLI.

45. Defendant's actions as described herein constitute violation of 15 U.S.C. §1125(a)(1)(A), as such actions are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with JLI and/or as to the origin, sponsorship, and/or approval of the Counterfeit Goods by JLI. These acts amount to false designations of origin.

46. JLI has been damaged as a result of Defendant's actions described herein. JLI alleges, on information and belief, that Defendant's sale of the Counterfeit Goods has resulted in lost sales to JLI, has reduced the business and profits of JLI, and has greatly injured the general reputation and goodwill of JLI, all

to JLI's damage in an amount not yet ascertainable, but will be determined during this action or to be considered in relation to a request for statutory damages.

47. JLI alleges, on information and belief, that Defendant has derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but will be determined during this action or to be considered in relation to a request for statutory damages.

48. On information and belief, Defendant acted intentionally and/or willfully in using the JUUL Marks on the Counterfeit Goods, knowing that the JUUL Marks belonged to JLI, that the Counterfeit Goods were in fact counterfeit, and that Defendant was not authorized to use the JUUL Marks on the Counterfeit Goods.

49. Defendant's acts of violating 15 U.S.C. §1125(a), directly and/or in contributory or vicarious manner, have caused, and will continue to cause, JLI irreparable harm unless they are enjoined by this Court. On information and belief, Defendant's actions were committed in bad faith and with the intent to cause confusion and mistake, and to deceive the consuming public as to the source, sponsorship, and/or affiliation of Defendant and/or the Counterfeit Goods.

### THIRD CAUSE OF ACTION

### Unfair Competition – Counterfeit Goods (15 U.S.C. §1125(a))

50. JLI re-alleges and incorporates by this reference each and every allegation in paragraphs 1 through 49 as though set forth fully herein.

51. An express purpose of the Lanham Act is to protect commercial parties against unfair competition.

52. Defendant's unauthorized use of the JUUL Marks, brand names, and the other distinctive words, symbols, color schemes, and designs through which JLI presents its products to the market constitutes wrongful and unfair business practices and marketplace bad faith, resulting in inaccurate representations to the consuming

public that the Counterfeit Goods sold by Defendant originated from or somehow are authorized by or affiliated with JLI. Defendant so acted for its own financial benefit in disregard to the harm being caused to JLI.

53. Defendant's actions as described herein constitute violation of 15 U.S.C. §1125(a)(1)(A), as such actions are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with JLI and/or as to the origin, sponsorship, and/or approval of the Counterfeit Goods by JLI. These acts amount to false representations to compete unfairly with JLI.

54. JLI has been damaged as a result of Defendant's actions described herein. JLI alleges, on information and belief, that Defendant's sale of the Counterfeit Goods has resulted in lost sales to JLI, has reduced the business and profits of JLI, and has greatly injured the general reputation and goodwill of JLI, all to JLI's damage in an amount not yet ascertainable, but will be determined during this action or to be considered in relation to a request for statutory damages.

55. JLI alleges, on information and belief, that Defendant has derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but will be determined during this action or to be considered in relation to a request for statutory damages.

56. On information and belief, Defendant acted intentionally and/or willfully in using the JUUL Marks on the Counterfeit Goods, knowing that the JUUL Marks belonged to JLI, that the Counterfeit Goods were in fact counterfeit, and that Defendant was not authorized to use the JUUL Marks on the Counterfeit Goods.

57. Defendant's acts of violating 15 U.S.C. §1125(a), directly and/or in contributory or vicarious manner, have caused, and will continue to cause, JLI irreparable harm unless they are enjoined by this Court. On information and belief,

Defendant's actions were committed in bad faith and with the intent to cause confusion and mistake, and to deceive the consuming public as to the source, sponsorship, and/or affiliation of Defendant and/or the Counterfeit Goods.

## FOURTH CAUSE OF ACTION

### Trademark Infringement – Grey Market Goods (15 U.S.C. §1114)

58. JLI re-alleges and incorporates by this reference each and every allegation in paragraphs 1 through 57 as though set forth fully herein.

59. Defendant's actions to sell and distribute Unlawful Grey Market Goods in the United States are intended to cause, have caused, and are likely to continue to cause public confusion or mistake, or to deceive consumers, the public, and the trade into believing that the Unlawful Grey Market Goods are genuine or authorized JUUL Products.

60. The Unlawful Grey Market Goods are non-genuine JUUL Products in the United States and the "first sale" doctrine does not foreclose Defendant's liability under this cause of action because the Unlawful Grey Market Goods materially differ from genuine JUUL Products authorized for sale in the United States. Specifically, among other things, the labeling and packaging of the Unlawful Grey Market Goods (i) state the products are only authorized for sale in particular countries outside the United States, (ii) are designed to comply with the regulations of the authorized foreign marketplaces, and (iii) are not in compliance with the regulations of the U.S. Food and Drug Administration.

61. The foregoing acts of Defendant constitute direct, contributory, and/or vicarious trademark infringement in violation of 15 U.S.C. §1114.

62. JLI has been damaged as a result of Defendant's infringement of the JUUL Marks. JLI alleges, on information and belief, that Defendant's sale and distribution of the Unlawful Grey Market Goods have resulted in economic loss to JLI and have injured the general reputation of JLI, all to JLI's damage in an amount not yet ascertainable, but will be determined during this action.

63. JLI alleges, on information and belief, that Defendant has derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but will be determined during this action.

64. On information and belief, Defendant acted intentionally and/or willfully in infringing upon the JUUL Marks through sale and distribution of the Unlawful Grey Market Goods, knowing that the JUUL Marks belonged to JLI, that the Unlawful Grey Market Goods were in fact infringing, and that Defendant was not authorized to infringe upon the JUUL Marks through sale and distribution of the Unlawful Grey Market Goods.

65. The acts of direct, contributory, and/or vicarious trademark infringement committed by Defendant have caused, and will continue to cause, JLI irreparable harm unless they are enjoined by this Court.  On information and belief, Defendant's actions were committed in bad faith and with the intent to cause confusion and mistake, and to deceive the consuming public into believing that the Unlawful Grey Market Goods are genuine or authorized JUUL Products.

## FIFTH CAUSE OF ACTION

(Unfair Business Practices (Cal. Business & Professions Code §17200, *et seq*.))

66. JLI re-alleges and incorporates by this reference each and every allegation in paragraphs 1 through 65 as though set forth fully herein.

67. Defendant's actions described herein constitute unlawful, unfair, and/or fraudulent business acts or practices.  Defendant's actions thus constitute "unfair competition" pursuant to California Business & Professionals Code §17200, *et seq*.

68. JLI has suffered an injury in fact, including without limitation, an amount to be proven at trial and diminution in the value of its trademarks and goodwill, as a proximate result of Defendant's unfair competition.

69. JLI requests that the Court order Defendant to disgorge all profits wrongfully obtained as a result of Defendant's unfair competition, and order Defendant to pay restitution to JLI in an amount to be proven at trial.

70. Defendant's actions have caused, and will continue to cause JLI to suffer irreparable harm unless enjoined by this Court.

## REQUEST FOR RELIEF

WHEREFORE, JLI hereby respectfully requests the following relief against Defendant Niazi. B Inc, a California corporation, as follows:

1. An award of Defendant's profits and JLI's damages for trademark infringement under 15 U.S.C §§ 1114 and 1117, trebled, in an amount to be proven at trial;

2. An award of Defendant's profits and JLI's damages for false designation of origin under 15 U.S.C. §1125(a), trebled, in an amount to be proven at trial;

3. An award of Defendant's profits and JLI's damages for unfair competition under 15 U.S.C. §1125(a), trebled, in an amount to be proven at trial;

4. In the alternative to Defendant's profits and JLI's damages for trademark infringement, an award of statutory damages pursuant to 15 U.S.C. §1117(c) of $2,000,000.00 for each of the counterfeited trademarks willfully utilized by Defendant per type of goods sold, offered for sale, or distributed;

5. An injunction by this Court prohibiting Defendant, and its respective agents, servants, employees, and representatives and all persons in active concert and participation with them, during the pendency of this action and permanently thereafter, from: engaging or continuing to engage in the infringing, unlawful, unfair, or fraudulent business acts or practices described herein, including the marketing, sale, distribution,

and/or other dealing in any non-genuine JUUL Products, including fake counterfeit products or unauthorized grey-market products; using without permission any mark or other intellectual property right of JLI; acting to infringe the JUUL Marks; falsely designating the origin of any product to be from JLI; engaging in unfair competition with JLI; or acting in any other manner to derogate JLI's intellectual property rights;

6. An Order requiring that Defendant provide complete accountings and for equitable relief, including that Defendant disgorge and return or pay JLI its ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution;

7. An Order that an asset freeze or constructive trust be imposed over all monies and profits in Defendant's possession which rightfully belong to JLI;

8. Pursuant to 15 U.S.C. §1116, including upon *ex parte* application, an Order for the seizure of goods and counterfeit marks and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in trademark violations;

9. Pursuant to 15 U.S.C. §1118, an Order requiring that Defendant and all others acting under Defendant's authority, at their cost, be required to deliver up to JLI for destruction all products, accessories, labels, signs, prints, packages, wrappers, marketing materials, and other material in their possession, custody, or control bearing any of the JUUL Marks;

10. Treble damages;

11. JLI's reasonable attorneys' fees;

12. All costs of suit;

13. Prejudgment interest and post-judgment interest in the maximum amount allowed under the law; and

14. Such other and further relief as the Court may deem just and equitable.

Dated: July 1, 2021

CLEMENT AND HO,
A PROFESSIONAL LAW CORPORATION

By  s/ Randall J. Clement
RANDALL J. CLEMENT
Attorneys for Plaintiff
JUUL LABS, INC.
E-mail: *randy@clementandholaw.com*